Good morning, your honors. Eric Slepian on behalf of Francis Garcia. I'm going to attempt to reserve four minutes for rebuttal. This is a case that started out in January 2000. It's a social security disability claim. We had our first hearing back in 2001. Ms. Garcia established an inability to perform her past work. It was an issue concerning whether or not she could do any other work. The burden of proof is on the defendant at that period of time. We appealed that case. It was sent back. Why? Directing the administration to make a step five determination addressing vocational expert testimony, dictionary of occupational titles, specific occupation selector. We have another hearing. Again, a step five denial. We appeal it. It gets remanded. Why? The commissioner to make a determination on vocational expert testimony, whether there's a conflict with the dictionary of occupational titles and the specific occupation selector. We have another hearing. It gets denied at step five. It's remanded. Why? Those same reasons. Happens again. Finally, we get to district court. They send it back for the same reason. We come up to the Ninth Circuit, and they say, come on, how many times are you going to make this lady do this? Try to mediate this case. Well, I understand all of that, but I guess at the bottom of the lay in this case has been significant, and it, you know, we could say it's like the gang that can't shoot straight or whatever. But is there any legal authority for the proposition that it really matters in what we're deciding here? We still have to decide the case we have before us. Absolutely. And, you know, and on one level, I think what your client's asking for is now sort of bootstrapping that in a sense. Look at the procedural history. Look at what I've been through. So now just award me benefits. It seems to me that we have to examine the case that we have before us. Correct. And with that in mind, Your Honor, I would point you to the strongest case, which is what's typically known as Varney 2, which basically states that if the administration fails to properly consider the claimant's evidence of disability, and then the courts have the discretion to credit that testimony as true. Well, the credit is true. There's a number of cases right now that are sort of ahead of you in the pipe that I think are going to be decided on that, and we're not in the front to do that. Right now it's my understanding that you don't really – the credit is true is still a pending matter, you know, that rule. If I may respond to that, Your Honor, because I think that that has been decided in the case of Vasquez, where this Court went through all of those cases pre-Vasquez discussing the credit is true doctrine and affirmatively came out and said the credit is true doctrine in the Ninth Circuit is good law. And there was a dissenting opinion. I believe it was by Justice O'Scallion who said, hey, it is. That's the rule in this circuit, and we should have en banc review. And there has never been en banc review. And until there's en banc review, it is the law pursuant to Vasquez. I think – but I think that it seems to me, though, that it's more the cases are split in the Ninth Circuit on that issue. And we've got three cases right now that are looking at substantially similar issues. I think Patricia Swims under v. Astru, which was submitted on February 7th of 12, and then Yesuda v. Astru, which was submitted on February 15th. So they're ahead of this case. I'm not familiar with those two cases, Your Honor. But from the published decisions that I am aware of that are currently out, there is no split. And I understand everybody's talking about a split. But what is going on is the credit is true doctrine. No court has come out and said, hey, that's an invalid doctrine. What they've come out and said is under the facts of this case, you don't get it. Under the facts of this case, you do get it. And the question is, why does Ms. Garcia get it? And the reason, if we look at Varney, is we have to look at a number of factors, one of which is the purpose of the system, the amount of delay, the prejudice to the claimant. If you look at the prejudice of the claimant, she lost her house in 2004. She lost her medical insurance in 2006. She has, according to the judge, diabetes. She cannot take diabetic medication. She's had a stroke. This lady, this system has failed. And she's on disability now. No. And I understand that counsel said she is. She's been found disabled by the Social Security Administration. But under SSI, which is very different than Title II, under SSI, you have to prove two different things. One, you have to prove disability. They said she did. And two, you have to have little or no household income. Her husband's income exceeded the limit, not by much, maybe $100 or so, and she wasn't qualified. And they told her, if you want your benefit, you have to not only divorce, but you have to separate, because it has to be legal. And she refused to do it. Okay. But let me – but I understand there's – but a remand for awarded benefits is appropriate only where there are no outstanding issues and the record shows the ALJ would be required to find Garcia disabled, correct? Correct. So I'm starting there. So what I'm asking you, isn't the availability of suitable jobs in the regional economy an outstanding issue? And also, Garcia's vocational expert, George Bluth, only testified about national jobs, not regional jobs. So how could the ALJ award benefits based on the incomplete evidence? I believe Dr. Bluth had indicated that there would be no jobs, not that it was just on a national level. Where can I find that in the record? Well, Dr. Bluth's finding is that the transcript page is 1399, Your Honor. Okay. 1399? Yes. That's where he said Garcia's extra limitations would limit her to sedentary work of a sit-stand option. Right. And that he did not believe that based upon the combination of limitations that were assessed, that Ms. Garcia would be able to sustain a position. I understand that's your argument, but I'm not quite sure that he was that specific. And I think it could be read both ways. But it seems to me that there's what we're talking about is whether the district court abused his discretion in sending it back to get more evidence. And the district court was concerned, as I understand it, with the vocational expert, that there wasn't sufficient cross-examination by the ALJ of her position that there were no jobs, that there weren't enough questions asked. So he wanted to have that record made. And if I understand correctly, you're saying that's an abuse of discretion because he should have said, time's up. I'm going to accept Dr. Bluth and grant benefits. I'm saying that it is an abuse of discretion if the district court does not follow the law. Any time there's a failure to follow the law. Wait a minute. I thought my question was easy to answer. Yes. I want to rephrase it. Was my question difficult for you to restate it? Yes, please, Your Honor. Okay. My question was, was there an abuse of discretion when the ALJ, the district court found the ALJ didn't ask the vocational expert sufficient evidence so that he could assess whether or not she was correct? Yes. There was an abuse of discretion. And your position is, no, it was an abuse of discretion because he should have at that point said, give benefits. No, because at that point he should have credited Ms. Garcia's evidence as true. He should have recognized that in 2001, Ms. Garcia sustained her burden of proof that the Commissioner of Social Security has in excess of six hearings to try to correct their error, and that it would be futile to send this thing back. What I have before me, though, in as I understand that last hearing was the problem that Dr. the question of whether Dr. Bluth's report was sufficient to carry the day. And apparently the district court judge believed, no, the problem is that that isn't sufficient, that you need the vocational expert, and he wasn't sure the vocational expert had been properly cross-examined by the ALJ. I understand what you're saying, Your Honor. And I, obviously, I respectfully disagree with that because I think based on Dr. Bluth's report that disability has been established, but we're missing. I'm talking about what he thought. Right. But we're also missing a piece of the puzzle, or at least I believe the district court missed a piece of the puzzle, and that is that the dictionary of occupational titles and the specific occupation selector is controlling unless they come around and change it. So when you're asking me what to accept is true, accept the dictionary of occupational titles. But, counsel, you're The problem was that the vocational expert has to say why this conflict. It doesn't matter. And the ALJ didn't do that. So there was a vacation in the record. We wouldn't be here now if that question was asked and answered, I suppose. Which particular question? Because we pretty much exhausted our questioning of the vocational experts, is my understanding. May I go to that for just a second on the issue of whether the ALJ established a reasonable basis for McAlpine to be accepted, even though she was inconsistent with the DOT and the other book, the SES? Yes. Now, turn to page 1486 of the record. Here's the ALJ asking the question. So, for instance, please correct me if I'm wrong, but I believe you testified in the past that the DOT may consider a waitress to be light, and many times it's medium, correct? Answer, things like that, yes, okay, yes. And sometimes, as in this case, you find that the DOT does not accurately describe it in terms of as strenuous, in terms of interpersonal relationships, or actual activity as what you've observed 20 years in the business, placing people for workman's comp, at least part of the time, correct? And it's just that observation that causes you to differ with the opinions of the Dictionary of Occupational Titles and Selected Characteristics of Occupations. Is that what you're telling me? Yes.     I'm saying that the DOT does not accept a waitress. Why isn't that a rational basis, an explanation as to why the expert does not accept  Well, look what she said on cross-examination, Your Honor. I just read it. No, that was on the questioning of the by the administrative law judge. And he was leading her the whole way. Absolutely. But so, and I questioned her on her very opinion. And she said, I've never done any kind of statistics or investigation regarding this specific. Nor am I citing anything that's printed. Okay. Right. And she did a good job on cross-examination. She made it up. No, she didn't make it up. She's under oath and she testified that she's seen two locations. One, a jar labeling operation. Right. And the other, an athletic sleeve and knee operation where the assembly production person does not need to have the DOT ability to sit there for six hours and to have interpersonal relationships and consistency and pace, which she under her RFC doesn't have. Right. But the issue is your is your claim that the evidence I've just read you is insufficient as a matter of law to allow the ALJ to accept McAlpine's testimony because there is no rational basis upon which to accept McAlpine's testimony? Absolutely, Your Honor. Tell me why. I can give you two reasons why. Well, two cases that will show you exactly why. I'd rather have you tell me why the cross-examination by the ALJ is insufficient to establish the legal requirement of variance from the DOT. Because vocational consultant testimony must be substantial and reliable. You have to have those two things. Must be substantial and reliable. Correct. What's wrong with McAlpine? She's got 20 years. She qualifies well. She had no statistical data to do anything. She couldn't reproduce any of her documentation. She couldn't remember the name of the employer. She said that her opinion was not based upon any surveys or observations considering the ALJ's specific restrictions and limitations. So essentially we have to find as a matter of law that what she said was insufficient. I think you have to ‑‑ I think you should find as a matter of law. Well, but for ‑‑ to defeat what Judge Bea is saying, why isn't that sufficient, that's what we would have to find. I think the conclusion is that without her producing any of her data and based upon how she expressed herself, that it would be impossible to find that that evidence is substantial and or reliable. Otherwise, any vocational expert can come into a hearing and say, I saw that job, and that's it. Well, we have that situation all the time in trial courts in California where an expert comes in, expert du jour, and if he qualifies, then whatever he testifies to is then submitted to the jury, and the jury can either evaluate it well or not. But it's very strange, it's very unusual, that an expert testimony will be stricken because it's not substantial and reliable after being given. I'm not saying it needs to be stricken, I'm saying it cannot be relied upon. Cannot be relied upon. What's the difference? And I think there's a significant difference because the individual who testified has qualifications, and based on those qualifications, she's permitted to testify at these hearings. The problem is she's got to back them up, and the case law says that she's got to back them up. And the difference between other cases and social security matters is we have presumptions in social security matters. This is a statute that has been designed to help individuals. It's something that people pay into the system in order to obtain. It's a very different type of benefit, and it's only for those that are disabled. And so the whole nexus between what we're asking for and how it works is different than we would have in other matters. And you had two cases you were going to tell me about. Yes. So the first is out of the Seventh Circuit, and that is McKinney v. Barnhart, and that's at 368 F. 3rd, 907, and I specifically directed to page 911. And the other case is a Ninth Circuit case in 1979, which is Hall v. Secretary of Health and Welfare, and that citation is 602 F. 2nd, 1372. And both of them talk about needing to produce substantial and reliable evidence and having to have data that can back it up. And I'm going to dovetail that with where I left off last time, which is that we have presumptions in Social Security set forth by the Dictionary of Occupational Titles, and it's their burden to overcome these presumptions, and it's their burden at Step 5. All right. We've gone 17 minutes now. No, but we've used the time, and you really don't have time for rebuttal, but after we hear from the administration, the Commissioner, then I'll ask my colleagues if they have any additional questions that they want to ask you. Thank you for your argument. Again, I want to compliment you on your cross-examination in the hearing of McAlpine. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. My name is Nadia Sullivan, and I represent the defendants of Helley, the Commissioner of Social Security. The sole issue on appeal is whether the district court abused its discretion by remanding this case for further proceedings instead of an immediate award of benefits. In Harmon v. Athol, this Court explained that the decision to remand for further proceedings generally turns upon the likely utility of such proceedings. Here, the district court did not abuse its discretion by remanding this case because there are outstanding issues that remain that are critical to this disability determination. So you don't want an affirmance. You don't want a reversal of the district court and an entry of an order that the applicant is denied benefits. You want a reversal to further proceedings in the ALJ. Correct, Your Honor. We do not challenge the district court's decision that this case needs to go back for a Step 5 determination. We agree that there was some, that the vocational expert didn't fully resolve the issues between how jobs are performed in Arizona. So you concede that the case has to be remanded to the ALJ for further proceedings? Yes, we do, Your Honor. I guess the situation would be, you know, that I think that whether at the end of the day it really matters, but I don't think this is the case that the Commissioner could have taken much more of the Court's time than it already has if you want to, like I said, sort of the gang that can't shoot straight. I mean, it keeps, every time it comes to court, we've got to send it back to do something more. I mean, this is probably a case that you should use for training to say how not to do something, because, you know, the point of doing something is to do it once and do it right. We don't dispute that there has been a tremendous delay in this case. But ultimately, you know, while the delay is certainly unfortunate and doesn't, as this Court recognized last time around, reflect well on our system, the delay is not relevant if Ms. Garcia is not in fact disabled. That's the standard. Right. But obviously when you're in that position, whether you're the government or whatever, when you do things, you, you know, you seek for the right answer, as opposed to when someone advocates, they could be advocating for a position that's inconsistent with the law or inconsistent with the facts, and that's why we go to court. But, you know, when you do something, if you feel that a person should not, should be denied benefits, you know, I think part of the job is also to create a situation where, you know, there's a delay, and there's a delay, and there's a delay, and there's a delay, and there's a delay, and there's a delay, as opposed to requiring the courts to keep doing it and doing it and doing it, that isn't something that, well, it's, it's not, it's something that's avoidable when lawyers do their jobs. And certainly, I mean, Your Honor, we can't dispute the history of this case, but the, the only issue, the ALJ's decision up to this point has been upheld except for one issue. So at this point, we've got valid findings concerning the medical records, medical opinions, Ms. Garcia's credibility, and we have a valid residual functional capacity determination. There is this one outstanding issue, and we have evidence in the record that Ms. Garcia can perform jobs in Arizona, and as Your Honor recognized, you know, the point is, don't we hope that these things are done one time and done correctly as opposed to having to come to the Ninth Circuit twice, having to keep getting remanded, and, you know, your lawyers aren't supposed to sit there like a potted plant, and if an ALJ doesn't make an appropriate, a finding that you know isn't going to withstand scrutiny, you say, you know, can the Court please state what the reasons are, why you're not crediting this testimony more specifically? Your Honor, last year, this Court recognized in Straus v. Commission on Social Security that even errors by the ALJ, no matter how egregious, don't warrant a remand unless the claimant is out. So what are the outstanding issues? The outstanding issue here is on the record, we have testimony from Ms. Alpine, vocational expert, that Ms. Garcia can perform jobs in Arizona based on the evidence found by the ALJ. There's no dispute about that, as Your Honor noted earlier. Well, I asked questions about what is it, was it blue? You do have that testimony, but the question is, does it stand the scrutiny that's necessary for the need to go back? Well, Your Honor. Let me ask my question before you answer it. The need to go back. Now, what I want to call your attention to is the conflict is won between her testimony and the DOT, and she has to give a reasonable explanation of why she should believe, be believed. She says Arizona. Okay. So that's Arizona. Then there's cross-examination by her lawyer that she admitted there are many production assembly jobs that would require more than superficial conduct and that Ms. Garcia would have difficulty maintaining a pace, would likely increase contact with coworkers and supervisors. She could not offer any way to verify her estimates of how many production assembly jobs in Arizona would be available for a person in Garcia's social limitation. Based on her experience, she says that she could get there, but the experience is not identified. Now, that's what you have on the record. Now, we come to the district judge, and the district judge says with that cross-examination, there isn't sufficient here to show a reasonable explanation of why her testimony is different from the DOT. And the argument of the administration is that Arizona is different. It has some jobs, and you want to make that plea to the district court, and the district court says, yes, the record is insufficient to show those jobs, and the expert was not able at that stage to be more sufficiently specific, so he wants it to go back. Now, I understand we would treat this with an abuse of discretion. Ordinarily, if a district judge decides they need more evidence, I'm the last one that's going to say that it's an abuse of discretion when there's something as meaningful as this. But on the other hand, you wonder with the record in the position it's in, why are we going back? Can you tell me what kind of evidence that you expect or evidence that you told the district judge you could expect to produce that required him to send the case back? What is there left that you plan or was there a record made of the additional evidence you expected? Well, first of all, to start out, I want to point out that in the Ninth Circuit, the case law is well established that, consistent with our regulations, a vocational expert's testimony, her experience, her knowledge, such as her observations and experiences, provides the appropriate support for her testimony. The cases that Ms. Garcia is relying on really amounts to departure from the Ninth Circuit case law. So here here. You're talking to Calpine, though, right? Correct, Your Honor. She did have documents. Did she almost have trouble remembering she testified before? Your Honor, you're right. And that's why there were some ambiguities in the record. But first, we start off with her testimony. She did provide a foundation. Could you answer, Judge, what was the question of the evidence she's going to produce? No, I was sort of giving you some background in terms of the legal framework. I didn't ask for background. I've read your brief. I ask a specific question that is going to depend upon my vote. I would hope you would answer it. No, I am going to answer your question. I think what she has to do, there's one conflict between the way jobs are described in the DOT and the way Ms. Alpine testified they're performed in Arizona, and that is that Ms. Alpine testified that it could be performed with, even by somebody who could only have brief, intermittent contact with supervisors. What we could go back, it's not we could have a different vocational expert basically explain how jobs are performed in Arizona with those types of limitations. Well, does that person, you said we could, but do you have an expert that would say that? Do you say what are you going to produce? We're going to ask this question. We, there was a lot of ambiguity about what the conflict is. But do you even know if there's someone that would say what would make? We don't know. We don't know ultimately what the issue is, but what Garcia is asking you to do is to presume that there is no foundation for her testimony, and that's a departure from the case law in the Ninth Circuit, in Beneke, in Lingenfelter, in all of these cases where one, if testimony is being credited. No, I guess, but the point is you're asking for a remand because you're saying at a remand that you'll be able to meet this burden. You concede that a remand is necessary to clarify this. So do you, in fact, know for, do you know for a fact you're going to be able to present evidence that will sufficiently meet your burden? You're saying, well, we could look for someone or we could try to do that. We have to further develop the record. We don't know, we can't say 100% that the vocational expert will provide, will clarify this. Why would you even proceed with a case where you know you can't meet your burden? I mean, that's the purpose of a remand is to, you know, what people say is on a remand, this is my offer of proof, this is what we would do, this is how we would, you know, this is what needs to be decided and this is how we would meet our burden. And what I'm hearing you say is you're not sure you can. The claimant is only entitled to benefits if she is, in fact, disabled. That issue has to be developed further. We don't have the evidence. That's why we agree that a remand is appropriate. But in our. But how are you going to develop it further? We're going to have a vocational expert come back and testify. There's a dispute here over what. Do you have one lined up? At this point, that's something that the administrative proceeding. The answer is no. We don't have a specific vocational expert lined up, no, Your Honor. What makes you think you can do better than McAlpine? Your Honor. Because that's not your problem. No. I mean, it's certainly, we want to make sure that the correct decision and comply with the law, which is to make sure that before we find somebody is disabled, we prove that they're disabled. At this point, our point is that it's premature. We don't know. Kennedy, what bothers me about this ALJ, in his decision at page ER35A, he writes two reasons why the expert's testimony is acceptable, even though inconsistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations. This issue number, reason number one, these publications purport to describe jobs that exist in the national economy at least as of the now distant time the data was collected. Now, McAlpine didn't testify as to anything as being her basis for varying from DOT based on the now distant time the data was collected in the DOT. Didn't say a word about that. Second reason, the above residual functional capacity is considerably more precise than these national publications. She didn't say anything about that. All she testified to in answer to leading questions by the ALJ was that waitresses work more strenuously in Arizona than they are described to have worked under the DOT. And that basis is used to flip it all around and say that she testified on a rational basis that Arizona jobs are less strenuous than the national economy. It doesn't make any sense. The testimony that she gave doesn't back up any of the findings of the ALJ. And I don't see any reason to send it back. McAlpine's testified twice. She couldn't remember the first time she testified. She was totally unprepared with respect to any publications, with respect to any documentation, with respect to the names of the employers which she had observed. And she's been there for 20 years and she testified all this time. How can you do better than McAlpine? And she's done very good. Well, to respond, first of all, Your Honor, I mean, the line of questioning that Ms. Garcia's counsel went at the hearing certainly are examples of types of publications that one might support your testimony, but it certainly isn't exclusive. And here Ms. McAlpine did rely on publications. She talked about the Occupations Outlook Handbook, the Bureau of Land Statistics, and the Arizona State Statistics. We're not going to find a publication that's going to have the exact limitations for every single ALJ's residual functional capacity that matches up with employers. That's why we have vocational experts. The Ninth Circuit has recognized that vocational experts are, you know, the very purpose of them is to go beyond facts and publications. Our regulations and the Ninth Circuit recognize that the DOT doesn't trump the vocational expert testimony. The DOT describes jobs generally. The DOT does, unless there's a rational basis for accepting the vocational expert's testimony as against the DOT, you would consider that. Right. I mean, the vocational expert must explain why jobs can be performed in the local economy if it's performed there differently than as defined in the DOT. Here we there the Ms. Alpine's testimony was more than conclusionary. I think that's what, you know, generally, you know, say, like, if you have a summary judgment, you can say, well, they committed malpractice. Well, that's not enough to defeat summary judgment if you just put something conclusionary and you have to have some reason and some stated expertise. What other than just the conclusionary statement is she going to be able to say? Well, Your Honor, I don't think it was. She didn't just testify, I know there are jobs in Arizona that Ms. Garcia can perform with the limitations assessed by the ALJ. She went beyond that. As I mentioned, she relied on numerous publications that provides data about job performance, and she relied on her own personal observations. So, but you already, but you conceded that the record as it is is insufficient. In terms of defining what the conflict is between the way jobs are performed in Arizona and how it's defined in the DOT. Well, if it's insufficient and it's your burden to prove the basis, isn't that doesn't Ms. Garcia win? No, it isn't. Not on the record, Your Honor, because right now we don't know. In Beneke, the facts established, and in Lingenfelder, we had vocational expert that says this person cannot work based on the limitations assessed by the administrative law judge. Here we have the opposite. We have testimony on the record. We have evidence in the record that says she can work. Again, in Beneke, we had all of these findings that the ALJ ultimately would be required on the record to find the claimant disabled. We don't have that here. We have an outstanding issue that could go either way. I mean, I can't, our position is that this conflict needs to be resolved, and that's even if you use the Would the remand, though, would the remand just be for the ALJ to say the reasons that the ALJ favored McAlpine over, you know, other contradictory evidence? Or are you saying the remand is we know that what we presented wasn't enough, so we're going to present more? The issue on remand would be to determine whether, based on her undisputed residual functional capacity, she can perform jobs in the national economy, including Arizona. We would bring on her. Well, so are you going to present more evidence, or? Yes, Your Honor. When a case goes back on remand, the ALJ opens up the record, and we certainly at this point, Ms. Garcia can question Dr. Bluth further, because as Your Honor recognized, Dr. Bluth did not specifically say there are no jobs in Arizona. That so even if you credited Dr. Bluth's testimony, you might, you, everyone agrees that as defined by the DOT, Ms. Garcia cannot perform jobs based on her residual functional capacity, but we do have evidence that she can perform jobs in Arizona. And disability, as the Social Security Act recognizes and as Strauss recognizes Your evidence is McAlpine. Yes, Your Honor. And it's undisputed. Counsel doesn't dispute her testimony that jobs are available in Arizona. He questions whether she can explain the conflict and what's required to establish foundation. Well, if you take a good look at the cross-examination that Mr. Slapien made, he's questioning that she ever really saw anybody do the kind of work that she says is available, because she can't recall where it was and what the name of the manufacturer was and how many people were there and what the interaction with the supervisors were. She just, a series of I don't recall, I don't recall, I don't recall. And again, Your Honor, while those may be ways to establish, provide foundation, those are not the only ways. And under Ninth Circuit law, the testimony of a vocational expert can, can provide the appropriate foundation. And I'll, I know I think we are over, you're over time, unless my colleagues have additional questions. I have, I have a question. Judge Wallace has a question. It seems to me that you're limited by what you can do if, if we hold that the district judge did not abuse his discretion. He says the, this is in his order, in page 5 of his order, the ALJ must resolve the conflict by determining if the explanation given by the vocational expert So there's not another vocational expert. The vocational expert and provide a basis for relying on the vocational expert's testimony rather than the DOT. So it's this person that's going to get back on the stand and the ALJ is going to try and elicit comments from the, this, this particular expert as to why these jobs in Arizona can be provide, can be accomplished by the claimant, right? Your Honor, that's one of the, the outstanding issue is whether she can perform jobs in Arizona. It's my understanding as to whether Ms. McAlpine would be available. I, I didn't read the order to be that specific. I mean, I, I read it as The vocational expert. I mean, our position would be we would need to clarify the, the issue itself. This is by determining if the explanation given by the vocational expert is reasonable. Well, if in fact the, that it's going to be Ms. Alpine that is the, is the vocational expert should be put back on, having in mind the cross-examination that's already been given of her. Is this, is this worth, is this worth sending it back even though the, the district judge would like to have it? It's going to be based on abusive discretion, which is a very high standard in my judgment. Is it really worthwhile? It is, Your Honor, because as this Court has recognized, it's not inevitable. I mean, the, the standard is really is it inevitable that she'd be fined, disabled. When you have an outstanding issue, you cannot, it's, you would be presuming that it's inevitable. But on the record, you have an issue that hasn't been resolved. And an ALJ, as it stands on the record, would not be required to find Ms. Garcia disabled. And I'll note just in similar cases, the ones that Ms. Garcia relies on, McKinney, the Seventh Circuit case, in the situation where you had fake testimony, they remanded the case to give the ALJ the opportunity to, to, to resolve the, the ambiguity and the reliability issue. And so it, it's our position that it was not an abusive discretion, and it's not an abusive discretion.  We understand your position. Thank you, Your Honor. Thank you. Did any of the judges have additional questions of Petitioner's counsel? No. All right. Thank you very much. Thank you both for your argument. This matter will stand submitted. Thank you.    Thank you. Thank you.
judges: Wallace, Callahan, Bea